IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CHARLES MARQUIS,                §
                                §
        Plaintiff-              §
        counterdefendant,       §
                                §  Civil Action No. 3:09-CV-2092-D
VS.                             §
                                §
OMNIGUIDE, INC.,                §
                                §
        Defendant-              §
        counterplaintiff.       §

MEMORANDUM OPINION
AND ORDER

The court must decide whether to dismiss the counterclaims of
defendant-counterplaintiff for failure to state a claim on which
relief can be granted.  For the reasons that follow, the court
denies the motion to dismiss.

I

The background facts are set out in a prior memorandum opinion
and order of the court.  *See Marquis v. OmniGuide, Inc.*, 714
F.Supp.2d 640 (N.D. Tex. 2010) (Fitzwater, C.J.).  The court will
therefore recount the background facts and procedural history that
are pertinent to the motion to dismiss.[1]

_____

[1]In deciding plaintiff's motion to dismiss, the court
construes the counterclaims in the light most favorable to
defendant-counterplaintiff, accepts as true all well-pleaded
factual allegations, and draws all reasonable inferences in its
favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th
Cir. 2004).  As the court explains below, to survive the motion,
OmniGuide must plead "enough facts to state a claim to relief that
is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S.
544, 570 (2007), and the "[f]actual allegations must be enough to
raise a right to relief above the speculative level," *id*. at 555.

Marquis worked as a senior sales representative at OmniGuide from October 2006 to November 2008.  On November 3, 2008 OmniGuide terminated Marquis after multiple warnings during his employment about his failure to meet sales performance standards and conduct that hindered his ability to sell OmniGuide products.  After he was terminated, Marquis made six communications about OmniGuide to third parties.  OmniGuide alleges that each was false and disparaging.

On November 3, 2008 Marquis sent an email to OmniGuide employees Doug Hutchison ("Hutchison"), Douglas Woodruff, Yoel Fink ("Fink"), and Yair Schindel ("Schindel"), stating that OmniGuide fibers have a 20% failure rate, that this alleged rate of failure would be "of interest to the FDA," and that OmniGuide charges some

---

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

In deciding the motion to dismiss, the court has taken into account the evidence from the appendix to Marquis' motion, along with facts alleged in OmniGuide's counterclaims, since the documents in the appendix are quoted extensively in OmniGuide's counterclaims and are central to OmniGuide's counterclaims, which arise from the communications contained in the documents. *See Kane Enters. v. MacGregor USA Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)) ("[T]he court may review the documents attached to the motion to dismiss . . . where the complaint refers to the documents and they are central to the claim.").  Consideration of the appendix of the motion to dismiss alongside the pleadings is appropriate in the Fifth Circuit because, "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.

accounts more than others for the same product.  He also stated, "I look forward to seeing the terms and compensation of my severance package[;] it will heavily influence my decisions going forward[.]" *Id.* at 6.  OmniGuide interpreted this statement as a threat to report OmniGuide to the Food and Drug Administration for misconduct unless OmniGuide offered Marquis a severance package sufficient to influence him otherwise.

On November 5, 2008 Marquis sent an email to several OmniGuide customers stating that OmniGuide gave no reason for his termination and communicating his suspicion that, with OmniGuide's "new practice of hiring much less experienced representatives" and "the company's sales not fully meeting the expectations of the venture capitalist investors," the company "may simply be running out of money."  *Id.* at 11.

On November 7, 2008 Marquis sent an email to all OmniGuide employees accusing Hutchison, who was OmniGuide's Vice President of Sales and Marketing, of "consistently pull[ing] data to describe how the company is faring in a positive light."  *Id.* at 1. Referring to Hutchison, Marquis also asserted that "OmniGuide is falling short of Goal, under your watch.  Front loading a single distributor can only go so far."  *Id.*  Marquis also stated that he planned to meet with a "superior Dallas based attorney who specializes in Qui Tam litigation" the next week, which OmniGuide interpreted as an accusation that OmniGuide defrauded the United

States government and as a threat to sue. P. App. 1.

That same day, Marquis sent an email to Lisa Suennen, one of OmniGuide's board members and lead investors. In that email, he accused Hutchison, Schindel, and Fink of destroying the morale of the sales team. Marquis stated: "[t]eam members will not speak to each other for fear that something might get passed along and they will be fired as a result," "[Sales Team] salaries were cut," "[Sales Team] commissions were made much more difficult to earn," "[Sales Team] quotas [were] completely arbitrarily assigned," "most of the best and brightest [of the Sales Team], including myself (this past Friday), were terminated, without warning," that newer OmniGuide sales representatives were only required to have "2 years of medical or B2B [business to business] sales experience," "some of the new sale members have never even called on a surgeon, but [were] selling and walking into an OR to support Neurosurgical procedures," "Doug [Hutchison] front loaded [an OmniGuide customer] with $200,000+ in fiber," "[OmniGuide] front loaded [an OmniGuide customer] with capital equipment," and that without the front loading OmniGuide or its sales team "would have ended up so much further below goal." *Id.* at 4-5 (internal quotation marks omitted).

On November 19, 2008 Marquis sent an email to another OmniGuide customer, John Hoopman ("Hoopman") at the University of Texas Southwestern Medical Center. The email stated that it

appeared to Marquis that OmniGuide was "building a representative force that is much less experienced so that they will work for much less of an income but still be satisfied" and that Marquis' training from OmniGuide was "very poor." *Id.* at 9. The email also stated that Marquis had never personally tried to get Hoopman fired, but that he was led and instructed by OmniGuide Regional Manager Tim Habeggar to file a complaint. The email also expressed that "there is a [likelihood] that the hospital will not be able to get reimbursed by the insurance carriers" if it purchased OmniGuide's disposable $CO_2$ fibers. *Id.*

At some point on or before April 2, 2009, Marquis also communicated by email to at least one professional recruiter, accusing OmniGuide of having a high product failure rate and a difficult reimbursement process. The communication also accused OmniGuide of reducing salaries, implementing an "absolutely mad" quota scheme, and temporarily discontinuing salaries for sales representatives who fell below average. *Id.* at 2. It stated that the CEO is a physics professor and "not a business person," that one of the managers had "no prior business experience" before OmniGuide, and that the other "gets off on firing people." *Id.* at 3. The communication concluded with the opinion, "formed by two years of working with the company's management," that "it would be the worst mistake of [a candidate's] life to join [OmniGuide]" and that the email's writer has no confidence that the company will

survive. *Id.* It appears that this communication was first sent to an unidentified recruiter, who sent it to recruiter Kim Price, who, in turn, forwarded it to OmniGuide sales manager Joe Anderson, on April 2, 2009. Anderson then forwarded the email to Hutchison on August 17, 2009. The forwarded excerpt of the original email has no identifying information such as an email address or the names of recipients or senders, but Marquis does not appear to deny that the excerpted words are his.

Marquis later brought this lawsuit against OmniGuide for age and disability discrimination, retaliation, defamation, breach of contract, and *quantum meruit* arising under federal and Texas law. After Marquis filed his second amended complaint, OmniGuide filed a motion to dismiss, which the court granted in part and denied in part, with leave to amend.

After Marquis filed his third amended complaint, OmniGuide counterclaimed for business disparagement and breach of contract. In support of the business disparagement counterclaim, OmniGuide alleges that "Marquis maliciously published to third parties a number of disparaging, non-privileged statements about OmniGuide's business character, financial position and products that he knew to be false." Answer ¶ 16. It avers that "OmniGuide has suffered special damages as a proximate result of the publication by Marquis of these statements." *Id.* at ¶¶ 13-14, 16-17. OmniGuide alleges that Marquis breached the Proprietary Rights and Non-Competition

Agreement ("Agreement") by revealing confidential and/or non-public information about OmniGuide in some of his communications, including information about OmniGuide's internal business, compensation structure and process, financial position, and products. OmniGuide also asserts that Marquis attempted to "interfere with" or "divert away" OmniGuide's business, in violation of the Agreement. Finally, OmniGuide avers that it has suffered actual and consequential damages as the proximate result of Marquis' breach and seeks recovery for those damages as well as attorney's fees, costs, and interest.

II

Marquis moves under Fed. R. Civ. P. 12(b)(6) to dismiss OmniGuide's counterclaims for failure to state a claim upon which relief can be granted. He asserts that OmniGuide's business disparagement claim is essentially a defamation claim based on reputational injury because OmniGuide does not plead direct pecuniary loss. Marquis contends that the one-year statute of limitations for defamation actions applies. Under a one-year statute, claims based on all six of the communications at issue would be time-barred because the last one was allegedly made no later than April 2, 2009 (the same day OmniGuide's sales manager first learned about it), and OmniGuide's counterclaims were filed

on July 1, 2010.[2]

OmniGuide responds that the court must apply a two-year statute of limitations for the business disparagement claim, instead of the one-year statute of limitations for defamatory actions. It maintains that it seeks damages for pecuniary loss and that the defamatory aspects of the disparagement claim are incidental. OmniGuide argues that it has alleged sufficient facts for the court to reasonably infer that OmniGuide suffered direct pecuniary harm from "loss of sales, loss of opportunity to hire the best and most capable sales force, the loss of opportunity to work with the best and most capable professional recruiters, the loss or interruption of investment capital and the loss of employees." D. Br. 4. OmniGuide contends that, because the facts needed to prove pecuniary harm are peculiarly within the knowledge or control of third parties——such as OmniGuide's customers, potential customers, applicants and would-be applicants, professional recruiters, and former employees——the court should not dismiss the case without giving OmniGuide the opportunity to conduct discovery.

Marquis also moves to dismiss OmniGuide's breach of contract claim, contending that OmniGuide has failed to plead damages with

---

[2]The email submitted in Marquis' appendix is actually dated August 17, 2009, but quotes from a forwarded message dated April 2, 2009. OmniGuide's counterclaim and response to Marquis' motion to dismiss both treat August 17, 2009 as the date of the communication, but it is reasonable to infer that the date of the communication was at least prior to April 2, 2009, the date the email was forwarded.

sufficient specificity to give the requisite notice. It posits that, in Texas, the defendant must prove damages resulting from the breach as an essential element of the claim. Marquis also contends that OmniGuide has failed to allege which of his statements was in breach of the agreement and what clients or customers were interfered with or swayed.

OmniGuide responds that it has sufficiently pleaded the damages arising from the breach of contract claim by identifying particular categories of confidential and non-public information, the specific recipients of Marquis' communications, and the context and general content of these disclosures. OmniGuide argues that, based on this information, the court can draw the reasonable inference that OmniGuide has suffered actual and consequential damages as a result of Marquis' communications. It also notes that it has yet to obtain discovery from Marquis and the third parties who know or control information as to the scope and breadth of the damages, and it posits that dismissal at this stage would be premature.

                                III

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129

S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "The court does not, however, 'rely upon conclusional allegations or legal conclusions that are disguised as factual allegations.'" *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *14 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (quoting *Jeanmarie v. United States*, 242 F.3d 600, 602 (5th Cir. 2001)).

In deciding a Rule 12(b)(6) motion, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive the motion, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.; see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the

speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged——but it has not 'shown'——'that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Rule 8(a)(2)) (alteration omitted).

"Although dismissal under Rule 12(b)(6) is ordinarily determined by whether the facts alleged in the complaint, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings." *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). "In the usual case, this court is unable to grant dismissal under Rule 12(b)(6) based on an affirmative defense because it rarely appears on the face of the complaint." *Simon v. Telsco Indus. Emp. Benefit Plan*, 2002 WL 628656, at *1 (N.D. Tex. Apr. 17, 2002) (Fitzwater, J.). Furthermore, "[i]t is well settled . . . that in order for a defendant to prevail on the basis of limitations at the pleadings stage, the plaintiff must normally plead [it]self out of court." *W. Fork Partners, L.P. v. Chesapeake Exploration, L.L.C.*, 2009 WL 2252505, at *5 (N.D. Tex. July 29, 2009) (Fitzwater, C.J.) (quoting *Funches v. City of Dallas*, 1999 WL 261842, at *2 (N.D. Tex. Apr. 28, 1999) (Fitzwater, J.)); *accord Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 Fed. Appx. 523, 524 (7th Cir. 2005) ("[D]ismissal under Rule 12(b)(6) on the basis of an affirmative defense is appropriate only where the

plaintiff pleads himself out of court by 'admitting all the ingredients of an impenetrable defense.'"); *Barasich v. Shell Pipeline Co.*, 2006 WL 3913403 (E.D. La. Nov. 20, 2006).

IV

The court turns first to Marquis' motion to dismiss OmniGuide's business disparagement counterclaim.

A

Marquis maintains that this counterclaim is time-barred under a one-year statute of limitations, while OmniGuide urges the court to apply a two-year statute.[3]

1

In Texas, slander actions are governed by a one-year limitations period. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a) (West 2002). Business disparagement actions are governed by a two-year limitations period when the injury alleged is direct pecuniary loss rather than a personal loss in reputation. *See id.* § 16.003(a) (West Supp. 2010); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987) (treating business disparagement action as slander action governed by one-year statute of limitations because of lack of pecuniary loss); *Newsom v. Brod*,

_____

[3]The business disparagement counterclaim would be time-barred under a one-year statute because it appears from the third amended complaint and appendix that the latest of the allegedly disparaging communications occurred on April 2, 2009, more than one year before the July 1, 2010 filing date for the counterclaim. The counterclaim would not be time-barred, however, under a two-year statute.

- 12 -

89 S.W.3d 732, 734 (Tex. App. 2002, no pet.) (acknowledging that business disparagement has two-year statute of limitations, but upholding application of one-year statute of limitations where injuries were primarily personal rather than relating to interference of commercial or economic relations). To determine the applicable limitations period, the court must decide whether the gravamen of the damages alleged in OmniGuide's counterclaim is personal or pecuniary. *See Hurlbut*, 749 S.W.2d at 767-77 (noting that slander and business disparagement protect different interests, and requiring evidence of damage to economic interests for claim to be evaluated as business disparagement claim). Several Texas courts, and the Fifth Circuit, have applied *Hurlbut* to treat business disparagement actions as defamation claims where the gravamen was defamatory injury to the plaintiff's reputation and there was no evidence of direct pecuniary loss. *See, e.g.*, *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 146-47 (5th Cir. 2007) ("*Nationwide II*") (applying *Hurlbut* to dismiss under Rule 12(b)(6) where plaintiff failed to allege any specific economic loss and "failed to provide any meaningful basis upon which to distinguish [business disparagement] claim from the defamation claim"); *Williamson v. New Times, Inc.*, 980 S.W.2d 706, 710 (Tex. App. 1998, no pet.) (applying one-year statute of limitations where damages alleged were primarily personal and general, such as "injury to personal reputation, humiliation, or

- 13 -

mental anguish," even though incidental or consequential professional losses were also pleaded and proved).[4]

OmniGuide's sole request for damages in its business disparagement counterclaim is for recovery for the corporate entity's special damages (i.e., a legal term referring to economic losses such as loss of sales, trade, or other business dealings). OmniGuide does not plead a defamation counterclaim or allege injury to the company's reputation, and it does not aver that the corporation somehow suffered "humiliation" or "mental anguish." Although some of Marquis' allegedly disparaging statements were about individual employees, no such individual is a party to this case. OmniGuide does not allege injury of a personal nature.

The court does not suggest, of course, that a corporation's nominal business disparagement claim should *never* be characterized as a defamation claim. Marquis notes that, in *Nationwide II*, a corporation tried to bring a defamation claim and a business disparagement claim. The panel held that the corporate plaintiff failed to provide any meaningful basis to distinguish its business

_____

[4]Although *Hurlbut* involved a decision to apply the one-year statute of limitations after trial, and Texas courts applying the one-year statute of limitations based on *Hurlbut* have done so at the summary judgment stage, several federal courts have applied *Hurlbut* to dismiss nominal business disparagement actions prior to discovery. *See, e.g., Nationwide II*, 512 F.3d at 139, 147 (affirming dismissal of business disparagement claim at Rule 12(b)(6) stage based on one-year statute of limitations); *Hamad v. Ctr. for Jewish Cmty. Studies*, 265 Fed. Appx. 414, 416-17 (5th Cir. 2008) (per curiam) (affirming Rule 12(b)(6) dismissal based on one-year statute of limitations).

disparagement claim from its defamation claim and applied the one-year statute of limitations. *Nationwide II*, 512 F.3d at 147. But as pleaded, the instant case is clearly distinguishable from *Nationwide II*. Unlike *Hurlbut* and *Nationwide II*, where the plaintiffs complained of defamation and reputational injury in addition to business disparagement, the gravamen of OmniGuide's complained damages is corporate injury to business; indeed, this is the only type of damages pleaded. And the only allegation concerning the particular type of injuries that OmniGuide has allegedly suffered appears in the breach of contract counterclaim. OmniGuide pleads in that context that Marquis "disparaged OmniGuide, thereby interfering with and diverting away OmniGuide's business," Answer ¶ 21—an economic, rather than a personal, injury. Moreover, as pleaded, OmniGuide's counterclaim tracks the elements of a Texas business disparagement claim, *see Hurlbut*, 749 S.W.2d at 766 (listing the five elements of business disparagement as publication, falsity, malice, lack of privilege, and special damages), rather than the elements of a defamation claim, *see id.* (noting the differences between defamation and business disparagement, in that defamation presumes the statement is false, imposes strict liability rather than requiring ill-will, and does not require pecuniary loss), specifically alleging falsity, malice, and special damages. The court concludes that these aspects of the counterclaim are sufficient to distinguish this claim as one for

business disparagement rather than for defamation.

The court notes that, because Marquis is moving to dismiss this counterclaim based on limitations, an affirmative defense, dismissal at the Rule 12(b)(6) stage is improper unless OmniGuide has pleaded itself out of court by admitting to all of the elements of the defense. *W. Fork Partners*, 2009 WL 2252505, at *5 (citing *Funches*, 1999 WL 261842, at *2); *Covington*, 154 Fed. Appx. at 524. Nothing about OmniGuide's pleadings explicitly precludes OmniGuide from asserting a counterclaim in which the gravamen of the complaint is economic loss by business disparagement.

*Nationwide II* does not require a contrary result. The *Nationwide II* panel interpreted a business disparagement claim as a defamation claim where the plaintiff only alleged that "prospective customers have seen the false statements in the article," *Nationwide II*, 512 F.3d at 147, and that the false statements in the article "demean the quality and value" of plaintiff's services, *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 2006 U.S. Dist. LEXIS 95243, at *14 (N.D. Tex. Oct. 16, 2006) (Godbey, J.) ("*Nationwide I*"). Specifically, in *Nationwide I* Judge Godbey appears to have based his decision on the difficulty in distinguishing between two very similar claims, and eventually decided on the defamation claim as the one that "predominate[d]." *See id.* at *13-14 ("In order to assert *separate and distinct claims*

*for defamation and business disparagement*, a plaintiff must allege economic harm beyond the defamatory injury to plaintiff's reputation, such as specific lost sales." (emphasis added)). Here, by contrast, OmniGuide has only alleged a business disparagement claim, and it has pleaded far more extensive facts than did the plaintiff in *Nationwide I*, such that the court can draw the reasonable inference that OmniGuide could have suffered economic damages, not just reputational injuries. In fact, according to the record, in one of the communications, an OmniGuide-affiliated recruiter specifically admitted: "In my recruiting efforts I am coming across affiliates that are having a lot of difficulty generating interest in the positions, especially in CA—this was given in confidence to one of the TOP recruiters I work with." This person then quoted from Marquis' allegedly disparaging communication to explain the "difficulty." P. App. 2. The court can reasonably infer from this email that at least one of Marquis' communications had a palpably negative effect on OmniGuide's ability to deal with potential employees, thus causing it economic damages.

The *Nationwide* cases do cite some Texas precedent that requires proof of specific economic losses, but the Texas cases do not reliably guide this court's application of the Rule 12(b)(6) pleading standard because they involve decisions made at the summary judgment stage or post-trial, after discovery and a full

evidentiary record. *See, e.g.*, *Hurlbut*, 749 S.W.2d at 763 (remanding for new trial); *Newsom*, 89 S.W.3d at 733 (affirming summary judgment); *Williamson*, 980 S.W.2d at 708 (affirming summary judgment). Texas does not have a rule of civil procedure that functions precisely as does Rule 12(b)(6). The law that governs Rule 12(b)(6) motions is federal, and the Fifth Circuit has explained that the Rule 12(b)(6) standard "'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556); *cf. Kinetic Concepts, Inc. v. Bluesky Med. Corp.*, 2005 WL 3068209, at *2 (W.D. Tex. Nov. 1, 2005) (describing business disparagement case that had survived to summary judgment stage without evidence of special damages, where court decided to grant continuance rather than grant summary judgment because the parties had not yet had opportunity to conduct discovery on the damages issue). As discussed above, the allegations are more detailed than what was provided in cases such as *Nationwide*. The court concludes that the accusations in the alleged communications, the recruiter's comment on the difficulty in generating interest, and the economic relationships implicated in the identity of the recipients——customers, employees, employee recruiters, and an investor——together raise a reasonable expectation that discovery will reveal evidence of economic harm sufficient to support the

allegation of special damages.

The court therefore applies the two-year statute of limitations to the business disparagement counterclaim and denies Marquis' Rule 12(b)(6) motion to the extent addressed to this counterclaim.

B

Marquis also moves to dismiss the business disparagement counterclaim on the ground that OmniGuide has not presented evidence of direct pecuniary loss to give rise to the special damages it alleges. But OmniGuide is not obligated at the pleading stage to produce evidence of direct pecuniary loss; it need only plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. OmniGuide has not merely requested "special damages." It has also pleaded "factual content that allows the court to draw the reasonable inference that the [counterdefendant] is liable for the misconduct alleged." *See Iqbal*, 129 S.Ct. at 1949. Assuming the truth of the well-pleaded factual allegations, as the court must, *see supra* note 1, it may be reasonably inferred that Marquis' negative statements about OmniGuide's financial health and treatment of employees to other employees, recruiters responsible for finding prospective employees, customers and potential customers, and at least one major investor could have plausibly caused economic losses, such as the loss of sales, trade, or dealings. Informing clients that the

company is underperforming and disparaging sales agents' experience could plausibly dissuade clients from buying the company's products. Telling an investor that the company is poorly managed and falling short of its sales goals could plausibly dissuade her from providing financing. And advising employees and recruiters responsible for referring potential employees that an organization is falling short of its goals, selling faulty products, and underpaying its sales representatives could plausibly dissuade employees from remaining with the company and dissuade recruiters from referring top talent to the company. The court therefore concludes that OmniGuide has pleaded sufficient facts to state a plausible claim that it was economically damaged as a direct result of the allegedly disparaging communications.

V

The court now considers Marquis' motion to dismiss OmniGuide's breach of contract counterclaim.

Both parties apply Texas law in their briefing, and in the absence of disagreement, this court does as well.[5] To establish a

_____

[5]Paragraph 5(h) of the Agreement provides that Massachusetts law applies. *See* P. App. 15. Neither party acknowledges this provision in the pleadings or the briefing, and both analyze the breach of contract claim under Texas law. Texas law and Massachusetts law have nearly identical elements for a breach of contract cause of action. *See, e.g.*, *Yellin & Hyman, P.C. v. James N. Ellis & Assocs., P.C.*, 2001 WL 755851, at *3 (Mass. Super. May 16, 2001) ("To succeed in a breach of contract action, a claimant must demonstrate (1) that the parties reached a valid and binding agreement, (2) that one party breached the terms of the agreement, and (3) that the other party suffered damages from the breach.").

breach of contract under Texas law, OmniGuide must prove (1) the
existence of a valid contract, (2) that OmniGuide performed its
duties under the contract, (3) that Marquis breached the contract,
and (4) that OmniGuide suffered damages as a result of the breach.
*E.g., Lewis v. Bank of Am. N.A.*, 343 F.3d 540, 544-45 (5th Cir.
2003) (Texas law). Marquis focuses his motion primarily on the
last element, arguing that OmniGuide has failed to plead any
damages. Apparently for the purpose of challenging the third
element——the existence of a contractual breach——Marquis also
asserts that OmniGuide did not specify the contents of his
communications that it considers confidential or non-public.
Because the other elements do not appear to be in dispute, the
court will limit its analysis to determining the sufficiency of the
breach and damages pleaded.

Marquis contends that OmniGuide has failed to identify which
of Marquis' statements was confidential, in violation of the
Agreement, and which customers or clients were affected by Marquis'
alleged breach. Marquis cites *Lehman Brothers Holdings, Inc. v.
Cornerstone Mortgage Co.*, 2009 WL 2900740, at *5 (S.D. Tex. Aug.
31, 2009), in which the court construed a one-sentence affirmative

---

Given that the elements Marquis challenges are the same in both
states, the court's analysis would not be any different under
Massachusetts law and the court need not discuss the choice of law
issue. *Cf. TNA Entm't, LLC v. Ashenoff*, 2009 WL 748236, at *3 n.2
(N.D. Tex. Mar. 20, 2009) (Boyle, J.) (declining to reach choice of
law dispute where complaint pleaded sufficient facts for breach of
contract under both Texas and Florida law).

defense and a one-sentence request for attorney's fees as a counterclaim for breach of contract and held that the bare assertions in the two sentences were inadequate to state a claim.

OmniGuide's counterclaim is not similarly defective. In *Lehman Brothers* the claimant simply asserted, as a part of its affirmative defense and request for attorney's fees, that the plaintiff breached the contract in "not providing required notice to Defendant of the allegations contained in this lawsuit, of failing to properly service the loans, and in delaying any notification of any problems with any loans sold to Plaintiff by Defendant." *Id.* at *3. The court did not state whether the lack of specificity regarding the damages element or breach element made the pleadings inadequate; rather, it noted generally that "[counter-plaintiff] fails to plead sufficiently under the standards that applied even before *Twombly* and *Iqbal*." *Id.* at *5.

OmniGuide, by contrast, identifies the particular contract and obligations in question, alleging that the Agreement prohibits Marquis from disclosing OmniGuide's confidential and non-public information and that it prohibits Marquis from interfering with or diverting OmniGuide's business. OmniGuide specifies how Marquis' actions allegedly violated these provisions by communicating information about OmniGuide's internal business and compensation structure and processes, financial position, and products. Facts alleged earlier in the counterclaim apprise the court of precisely

which of Marquis' statements OmniGuide maintains violate the
Agreement. OmniGuide quotes particular passages from Marquis'
emails on the topic of OmniGuide's internal business, compensation
structure, financial position, and products. *See* Answer ¶¶ 7-12.
In pleading these details, OmniGuide provides far more than mere
"labels and conclusions"; the allegations notify Marquis of the
statements——drawn from six communications that are identified by
date and recipient——on which OmniGuide bases its claim. OmniGuide
is not obligated to provide a sentence-by-sentence identification
of the parts of the communications that are allegedly confidential.
Under *Twombly*, it must merely "identify enough to state a claim to
relief that is plausible on its face." *Twombly*, 550 U.S. at 570.
It has done so by identifying particular communications and
specifying the allegedly confidential topics discussed——"including
but not limited to information as to OmniGuide's internal business
and compensation structure and processes, financial position and
products." Answer ¶ 21. Perhaps OmniGuide could have been more
detailed by quoting each offending statement verbatim, but Rule
12(b)(6) does not require this level of detail. While Marquis is
free to challenge whether the contents of his identified statements
are in fact confidential, as he does in his motion, the question
whether a particular communication was intended to be confidential
is a factual one, *see Elwood v. Cigna Lloyds*, 1999 WL 7672, at *5
(Tex. App. Jan. 8, 1999, pet. denied) (not designated for

publication) (citing *Cameron Cnty. v. Hinojosa*, 760 S.W.2d 742, 745 (Tex. App. 1988, no writ)), and at this stage in the litigation the court accepts all allegations of fact as true in favor of the nonmovant. OmniGuide alleges that "[m]any of these communications by Marquis revealed to third parties the confidential and/or non-public business information of OmniGuide in violation of the [Agreement][.]" Answer ¶ 13. Thus assuming the truth of this allegation, OmniGuide's pleadings plausibly show that Marquis' obligation to maintain confidentiality and not to interfere with OmniGuide's business has been breached. The court may also reasonably infer that Marquis' statements about OmniGuide's business, directed at OmniGuide employees, recruiters, investors, and potential customers, constituted an "attempt to use [the confidential information in a manner] . . . calculated to injure or cause loss whether directly or indirectly to the Company," in violation of ¶ 1 of the Agreement. P. App. 13.

Marquis maintains that OmniGuide has not presented any concrete facts to support the allegation that "OmniGuide has suffered actual and consequential damages as the proximate result of Marquis' breach of the Agreement." Answer ¶ 22. But OmniGuide does plead in greater detail the sorts of harm it considers "actual and consequential damages" proximately caused by Marquis' breach: that is, Marquis' "multiple communications with third parties, including OmniGuide customers, . . . disparaged OmniGuide, thereby

interfering with and diverting away OmniGuide's business." *Id.* at
¶ 21. Combined with the counterclaim's specific quotations of
Marquis' communications to third parties on the topic of
OmniGuide's "internal business and compensation structure and
processes, financial position, and products," as mentioned in the
counterclaim, OmniGuide has sufficiently pleaded the type of harm
alleged——i.e., "interfering with and diverting away OmniGuide's
business"——for the element of damages to be adequately pleaded.
And, from the allegations and inferences discussed above concerning
the business disparagement claim, the court can reasonably infer
that Marquis' negative statements to employees, recruiters,
customers and potential customers, and one major investor about
OmniGuide's financial health and treatment of employees could have
plausibly interfered with OmniGuide's ability to negotiate sales
with customers, retain employees, hire new talent, and/or attract
capital. Therefore, the court concludes that OmniGuide has
sufficiently pleaded a plausible claim that OmniGuide was damaged
as a direct result of the breach of contract. Accordingly, the
court denies Marquis' Rule 12(b)(6) motion to the extent addressed
to the breach of contract counterclaim.

VI

In addition to moving to dismiss OmniGuide's counterclaims,
Marquis seeks dismissal of OmniGuide's request for attorney's fees
under Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2008),

alleging that OmniGuide failed to present to Marquis or his counsel any claimed breach of contract damage amount.[6]  In support, he posits that an attorney's fees claimant must present the claim to the opposing party and give the party an opportunity to cure the breach before attempting to recover attorney's fees.  *See id.* at § 38.002.[7]

The court rejects Marquis' request as premature.  "There is no requirement in the statute that the demand for payment be made prior to the time suit is filed." *Palestine Water Well Servs. v. Vance Sand & Rock, Inc.*, 188 S.W.3d 321, 327 (Tex. App. 2006, no pet.).  Rather, the requirement is merely that the claim is not paid within 30 days once the demand is made.  *Id.* (citing *Stuckey v. White*, 647 S.W.2d 35, 38 (Tex. App. 1982, no writ)).  Because OmniGuide still has time to make a proper demand, Marquis' argument

---

[6]Marquis includes this argument in the part of his brief that pertains to OmniGuide's breach of contract counterclaim, but OmniGuide addresses it separately, as though Marquis is moving to dismiss the request for attorney's fees under Rule 12(b)(6). Because Marquis' argument lacks merit, the court need not decide whether it is proper procedurally.

[7]Section 38.002 provides:

> To recover attorney's fees under this chapter:
> (1) the claimant must be represented by an attorney;
> (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and
> (3) payment for the just amount owed must not have been tendered before the expiration of the 30th day after the claim is presented.

lacks merit.

*     *     *

Accordingly, the court denies Marquis' July 21, 2010 motion to dismiss.

**SO ORDERED**.

January 28, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE